## UNITED STATES U.S. DISTRICT COURT
## DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA

      v.

ROUZBEH "ROSS" HAGHIGHAT,
BEHROUZ "BRUCE" HAGHIGHAT,
KIRSTYN M. PEARL, SEYEDFARBOD
"FABIO" SABZEVARI, and JAMES D.
ROBERGE

Hon. Michael E. Farbiarz

Crim. No. 25-339

---

## MEMORANDUM IN SUPPORT OF DEFENDANT BEHROUZ "BRUCE" HAGHIGHAT'S MOTION TO DISMISS THE INDICTMENT

---

Dated: August 8, 2025

**BERLINER CORCORAN & LLP**

William F. Coffield
Laina C. Lopez
1101 17th Street NW, Suite 1100
Washington, D.C. 20036
(202) 293-5555

*Attorneys for Defendant Behrouz "Bruce" Haghighat*

3

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………….………...…………ii

INTRODUCTION……………………………………………………………...…………1

THE CHARGES AGAINST BRUCE HAGHIGHAT……………………….……………3

ARGUMENT…………………………………………………………………...…………7

    A.  The Indictment's Contradictory Allegations Against Bruce Warrant Dismissal
        of the Indictment as Repugnant………………………………………………....…8

        1.  Governing Legal Principles……………………………………………………8

        2.  The Indictment is Repugnant………………………………………...……9

    B.  The Indictment Against Bruce Fails to State an Offense Because Its Factual
        Allegations Do Not State What (If Any) MNPI Ross Told Bruce, or That Bruce
        Knew the MNPI Was Disclosed In Violation of Any Duties by Ross…………………...11

        1.  Governing Legal Principles………………………………………………...……11

        2.  The Indictment's factual allegations do not identify what, if any, MNPI
            Ross told Bruce; nor that Bruce knew any MNPI was disclosed
            in violation of any fiduciary duties by Ross………………………………..13

    C.  The Indictment Fails to State an Offense Because Its Specific Allegations Show
        Bruce Did Not Willfully Trade, Profit, Or Do So Based on MNPI………………………...20

CONCLUSION…………………………………………………………………………..23

CERTIFICATE OF SERVICE……………………………………………………...……24

## TABLE OF AUTHORITIES

**Case**                                                                                          **Page(s)**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)………………………………………………….…………..3
*Chiarella v. United States,*
  445 U.S. 222 (1980)…………………………………………………….…22
*Ciminelli v. United States,*
  598 U.S. 306 (2023)…………………………………………………….…22
*Dirks v. SEC,*
  463 U.S. 646 (1983)……………………..………………………………14-15, 21, 22
*Kelly v. United States,*
  590 U.S. 391 (2020)…………………………………………………….…22
*Salman v. United States,*
  580 U.S. 39 (2016)…………………………………………..…………15, 21, 22
*SEC v. One or More Unknown Traders in the Secs. Of Fortress Inv. Grp., LLC,*
  2018 U.S. Dist. LEXIS 167164 (D.N.J. Sept. 27, 2018)……………………………14
*United States v. Cantrell,*
  612 F.2d 509 (10th Cir. 1980)……………………………………..…………….9
*United States v. Bergrin,*
  650 F.3d 257 (3d Cir. 2011)……………………………………………12, 13
*United States v. Blount,*
  2025 WL 406035 (W.D. Pa. Feb. 5, 2025)…………………………………..18
*United States v. Bobo,*
  344 F.3d 1076 (11th Cir. 2023)………………………………………………18, 19
*United States v. Chestman,*
  947 F.2d 551 (2d Cir. 1991)…………………………………...……………14, 15
*United States v. Chow,*
  993 F.3d 125 (2d Cir. 2021)………………………………………………16
*United States v. Cisneros,*
  26 F. Supp. 2d 24 (D.D.C. 1998)…………………………………………..8
*United States v. Coburn,*
  439 F. Supp. 3d 361 (D. N.J. 2020)……………………………………………8
*United States v. Conde,*
  309 F. Supp. 2d 510 (S.D.N.Y. 2003)……………………………………………8, 11
*United States v. Constantinescu,*
  2024 WL 1221579 (S.D. Tex. Mar. 20, 2024)………………………………....…21-22
*United States v. Greenlaw,*
  84 F.4th 325 (5th Cir. 2023)……………………………………..………16, 21
*United States v. Harra,*
  985 F.3d 196 (3d Cir. 2021)………………………………….………...………..15
*United States v. Hess,*
  124 U.S. 483 (1888)…………………………………………………..12, 13, 16, 18
*United States v. Hill,*
  98 F.4th 473 (3d Cir. 2024)…………………………………….……………………12

*United States v. Hird*,
   913 F.3d 332 (3d Cir. 2019)……………………….…………………………..13, 16
*United States v. Huet*,
   665 F.3d 588 (3d Cir. 2012)……………………………...………….…3, 11-13, 16
*United States v. Kemp*,
   500 F.3d 257 (3d Cir. 2007)……………………………………………………13
*United States v. McGee*,
   763 F.3d 304 (3d Cir. 2014)……………………………………………………14
*United States v. O'Hagan*,
   521 U.S. 642 (1997)……………………………………………………14, 15, 21
*United States v. Palo*,
   2017 WL 6594196 (W.D. Pa. Dec. 26, 2017)……………………….……………8, 11
*United States v. Panarella*,
   277 F.3d 678 (3d Cir. 2002)……………………………………………………13
*United States v. Pimenta*,
   2015 WL 6502098 (D.N.J. Oct. 27, 2015)……………………………………………18
*United States v. Porter*,
   933 F.3d 226, 229 (3d Cir. 2019)……………………………………………………13
*United States v. Rajaratnam*,
   2014 WL 1554078 (S.D.N.Y. Apr. 17, 2014)……………………………………8, 10-11
*United States v. Shvartsman*,
   722 F. Supp. 3d 276 (S.D.N.Y. 2024)……………………………………………16
*United States v. Willis*,
   844 F.3d 155 (3d Cir. 2016)……………………...……………………..13, 16, 20

## Statutes

18 U.S.C. § 1348…………………………………...…………………………3, 14, 15-16
18 U.S.C. § 1349…………………………….………………………………………….3, 16
15 U. S. C. §78……………………….……………………………………14, 15, 16, 21

## Rules

Fed. R. Crim. P. 7(c)(1)…………………………………...……………………11

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) 2:25-cr-339-MEF |
| | ) |
| ROUZBEH "ROSS" HAGHIGHAT | ) Hon. Michael E. Farbiarz |
| BEHROUZ "BRUCE" HAGHIGHAT | ) |
| KIRSTYN M. PEARL, SEYEDFARBOD | ) |
| "FABIO" SABZEVARI, and | ) |
| JAMES D. ROBERGE | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANT BRUCE HAGHIGHAT'S**
**MOTION TO DISMISS THE INDICTMENT**

Defendant Behrouz ("Bruce") Haghighat, through counsel, respectfully moves to dismiss the Indictment as to him for failure to state an offense, for the grounds set forth below.[1]

**INTRODUCTION**

The Indictment, charging insider trading, alleges broadly that Ross Haghighat ("Ross"), a Board member of Chinook Therapeutic ("Chinook") ("Company-1" in the Indictment), separately tipped his brother, stepdaughter, and two of Ross's associates by independently passing each of them "material nonpublic information ('MNPI')" regarding Chinook's acquisition by Novartis ("Company-2" in the Indictment), and further that Ross and each of those to whom he passed information separately traded and profited based on that MNPI. *E.g.*, Ind. ¶¶ 1, 18.

Bruce Haghighat, Ross's brother (Ind. ¶ 2(b)), is charged with insider trading (Counts 1 and 3, Ind. ¶¶ 81, 83) and conspiracy (Count 18, Ind. ¶ 85) based on a single trade in which he bought a block of Chinook shares *as trustee for an irrevocable trust granted by Ross*, and later sold them at a profit for the trust, at Ross's direction. The indictment does not allege that Bruce

---

[1] We also join the arguments presented in the other Defendants' Rule 12 motions to the extent they apply to Defendant Bruce Haghighat.

or any of his children or next of kin were beneficiaries of the trust; nor that Bruce did any trading in Chinook individually; nor that Bruce received any direct or indirect profit.

As to Bruce Haghighat, the Indictment is subject to dismissal for three independent reasons:

*First*, the Indictment is facially inconsistent: it alleges simultaneously that Bruce (i) traded and illegally profited for himself; and (ii) executed those same trades as trustee for a trust he neither granted nor benefited from, resulting in zero profits to Bruce. This irreparable inconsistency requires that the Indictment against Bruce be dismissed as repugnant.

*Second*, the Indictment fails to state an insider trading offense against Bruce because it does not allege (except in conclusory terms) that Bruce willfully traded based on MNPI that he knew was disclosed to him in violation of Ross's fiduciary duties to Chinook. Though the Indictment conclusorily states Bruce traded based on MNPI known to Ross, it does not state: (i) what that MNPI was; (ii) that Ross disclosed it to Bruce, (iii) that Bruce knew Ross had any corporate duties or confidentiality obligations to Chinook; or (iv) that Bruce knew it was disclosed in violation of such duties. Without those allegations, the Indictment is insufficient to state an offense of tippee insider trading.

*Third*, the substantive charges in Counts 1 and 3 fail to allege that Bruce himself traded or profited whatsoever (either directly or indirectly), much less that he willfully traded based on MNPI disclosed to him, either on his own or the trust's behalf.  Instead, the Indictment expressly alleges that Bruce, the trustee of the Akma Irrevocable Trust, traded based on instructions from the Trust's grantor, not on his own assessment of any MNPI. Bruce's action as trustee, executing a trade requested by the grantor as specifically alleged, is not a crime. Where the Indictment's

specific factual allegations fail to allege any trades or personal financial gain by the supposed tippee, those allegations fall beyond the scope of the charged statutes.

## THE CHARGES AGAINST BRUCE HAGHIGHAT[2]

The Indictment (Dkt. 10) ("Ind.") charges that Ross Haghighat learned material nonpublic information ("MNPI") regarding Novartis's acquisition of Chinook (the "Acquisition") while he was a Director on Chinook's Board, and illegally tipped his brother Bruce,[3] as well as each of three other defendants,[4] in separate, unrelated and unalleged conversations, to trade in Chinook securities on the basis of that MNPI.  *See generally* Ind. ¶ 1 (Overview); Ind. ¶¶ 2(a)-(b) (describing Ross and Bruce), Ind. ¶¶ 14-18 (describing the alleged scheme).

Bruce is charged in only three of the Indictment's nineteen counts.[5] The charges against him are based on a single purchase of 2,000 Chinook shares on May 26, 2023, *see* Ind. ¶¶ 19, 25, 83 (chart, Line 3), and the later sale of those shares for a profit of approximately $32,680 on July

---

[2] On a motion to dismiss, the Court accepts as true the facts alleged in the Indictment. *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012). But that tenet "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing *Bell Atlantic v. Twombly*, 550 U.S. 554, 555 (2007)). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation," *id.*, in the criminal context any more than the civil context. *See Huet*, 565 F.3d at 595 ("[W]e need not blindly accept a recitation in general terms of the elements of the offense.").

[3] To avoid confusion, we refer to Bruce Haghighat as "Bruce" and to Ross Haghighat as "Ross."

[4] The other defendants are Kirstyn M. Pearl (Ross's stepdaughter and employee in a separate company for which Ross is CEO ("Company-3") (Ind. ¶ 2(c)); Seyedfarbod "Fabio" Sabzevari, a Company-3 employee (Ind. ¶ 3(d); and James D. Roberge (an engineer at another unrelated company, "Company-4") (Ind. ¶ 3(e)). The Indictment does not allege any relation or connection between Bruce and the other Defendants or their actions.

[5] Bruce is charged in Count 1, Securities Fraud under 18 U.S.C. § 1348 (Ind. ¶ 81); Count 3, Securities Fraud under Rule 10b-5 (Ind. ¶ 83); and Count 18, Securities Fraud Conspiracy under 18 U.S.C. § 1349 (Ind. ¶ 85). (Count 18 charges conspiracy only between Ross and Bruce. A separate conspiracy charge against Ross and another Defendant (Kirstyn Pearl) (Count 19, Ind. ¶ 87) does not involve Bruce.)

10, 2023, *see* Ind. ¶¶ 27-30, after the Acquisition was publicly announced on June 12, 2023, *see*

Ind. ¶ 27.

<u>Bruce's Role as Trustee</u>

The Indictment alleges Bruce purchased the shares, and later sold them, as Trustee of a

trust for which Ross was the grantor:

> ¶ 20. BRUCE HAGHIGHAT traded those shares in a brokerage account at
> Broker-2 in the name of the "Akma Irrevocable Trust," a trust for which
> BRUCE HAGHIGHAT was trustee and ROSS HAGHIGHAT was the grantor.
> The Akma Account was managed by Financial Advisor-1, a wealth advisory
> firm at which both ROSS HAGHIGHAT and BRUCE HAGHIGHAT
> maintained accounts, including the Akma Account. Broker-2 was the broker
> for trading in the Akma Account.

<u>Bruce's Purchase of the Chinook Shares for the Trust</u>

The entirety of the Indictment's allegations regarding Bruce's purchase of the Chinook

shares is as follows. For convenience, communications by Bruce are reproduced in bold:

<u>BEHROUZ "BRUCE" HAGHIGHAT</u>

> ¶ 19.  ROSS HAGHIGHAT, for personal benefit with the expectation of
> trading and in violation of his duties, provided MNPI to BRUCE
> HAGHIGHAT, who then traded Company-1 securities on the basis of that
> MNPI. BRUCE HAGHIGHAT purchased approximately 2,000 Company-1
> shares prior to the Acquisition Announcement, which Bruce Haghighat later
> sold for a profit of approximately $32,680.

> ¶ 20 [quoted above].

> ¶ 21. Specifically, on or about May 25, 2023, approximately three days
> after Company-2 indicated it would increase its proposed all-cash purchase
> price to $36.00 per share – which was MNPI known to ROSS HAGHIGHAT –
> BRUCE HAGHIGHAT emailed a wealth advisor, Advisor-1, at Financial
> Advisor-1, writing, **"I have a short window of opportunity for a transac-**
> **tion. Is the AKMA account set up in a way that I can trade options?"**

> ¶ 22. Advisor-1 responded, "Unfortunately, that account is not set up for
> options trading. Would you like to add that capability to the account?" BRUCE
> HAGHIGHAT responded, **"Yes, Pls add this option to this account ASAP. I**
> **will have a transaction for you as early as Friday, or next Tuesday. Pls let**
> **me know when this feature has been added."**

4

¶ 23. The following day, on or about May 26, 2023, Advisor-1 responded, "Because of the complexity of options trading and our compliance process, I think it would be in your best interest to place any options trading directly with [Broker-2] on the retail side." BRUCE HAGHIGHAT responded, **"Well time is of the essence."**

¶ 24. Also on or about May 26, 2023, BRUCE HAGHIGHAT and ROSS HAGHIGHAT exchanged several calls and texts throughout the day. At approximately 12:14 p.m., BRUCE HAGHIGHAT texted ROSS HAGHIGHAT, **"What is the stick [sic] symbol."** ROSS HAGHIGHAT then sent BRUCE HAGHIGHAT a WhatsApp message at approximately 12:14 with the Company-1 ticker symbol. At approximately 12:15 p.m., BRUCE HAGHIGHAT sent a text to ROSS HAGHIGHAT that read: **"[Advisor-1] called me and he needs 3 days to set up for options. I am just going to buy it direct. If you changed your mind, let me know in the next hour."** At approximately 12:15 p.m., ROSS HAGHIGHAT and BRUCE HAGHIGHAT spoke on the phone for approximately one minute and eighteen seconds. At approximately 12:20 p.m., BRUCE HAGHIGHAT sent a WhatsApp message to ROSS HAGHIGHAT that read: **"Done. Let me know the exit."** At approximately 12:25 p.m., ROSS HAGHIGHAT responded by WhatsApp: "OK we can talk[.]"

¶ 25. At approximately 1:02 p.m. the same day, BRUCE HAGHIGHAT emailed Financial Advisor-1 writing, **"did you put the trade in … don't see it on the account. I am trying to buy it today."** The same day, approximately 2,000 Company-1 shares were purchased in the Akma Account at an approximate price of $22.66 per share.

<u>Bruce's Sale of the Shares After the Acquisition Was Announced</u>

The Indictment alleges Bruce sold the shares (again, as Trustee of the Akma Irrevocable Trust, Ind. ¶ 20, 30) at a profit after the Acquisition was announced publicly on June 12, 2023 (*see* Ind. ¶¶ 13, 26). The entirety of the Indictment's allegations regarding the sale is as follows. Again, communications by Bruce are reproduced in bold.

¶ 27. … [O]n or about June 12, 2023, the day of the Acquisition Announcement, BRUCE HAGHIGHAT texted ROSS HAGHIGHAT, **"Let me know when u want to sell the stock."** ROSS HAGHIGHAT responded, "Oh right. Let's all it [sic] for $39 anytime[.]" Shortly thereafter, ROSS HAGHIGHAT again texted BRUCE HAGHIGHAT, "Bruce Ali, on second thought, hold onto it. The deal is $40+2+2 or $42/sh. The deal should close in August. Stock is at $38. Seems it has another 5-8% gain to go. So let's leave it alone. Thnx[.]"

5

¶ 28. The same day, on or about June 12, 2023, BRUCE HAGHIGHAT emailed Advisor-1 writing:

> **I would like to place the following order:…**
>
> **Stick [sic]: [Company-1 ticker symbol]**
> **Price per share: $39**
> **Sell all.**
>
> **So, when it hits price of $39 per share, I like to sell all of them Else, [sic] sell none of it.**
>
> **Good until cancelled.**
>
> **Thanks,**
>
> **Bruce**

¶ 29. On or about June 13, 2003, BRUCE HAGHIGHAT wrote in another email to Advisor-1, **"let's hold off on this request below. I will contact you in 2 weeks time. I rather wait a little longer."**

¶ 30.  On or about July 7, 2023, BRUCE HAGHIGHAT wrote an email **instructing Advisor-1 to sell all Company-1 shares for $39.00 per share**. Through the Akma Account, Advisor-1 sold approximately 2,000 Company-1 shares at approximately $39.00 per share that day, for an approximate profit of $32,680.

¶ 31 On or about July 10, 2023, Advisor-1 wrote to BRUCE HAGHIGAHT [*sic*]: "Just a quick note—your trade has been completed, all shares liquidated. The account is now in cash pending further instruction." On or about that same day, BRUCE HAGHIGHAT texted ROSS HAGHIGHAT, **"The stuff sold. All in cash now. If u r not moving it, we should put it into a MM fund. Will pay about 4-5%. Balance is now 122K."**

¶ 32. On or about July 24, 2023, the approximately $122,254 in the Broker-2 Akma Account was wired to an account at Broker-3 in the name of the R. Ross Haghighat Irrev. Trust," for which BRUCE HAGHIGHAT was the trustee (the "Broker-3 Account").

<u>The Charges Against Bruce</u>

On the above allegations of fact, the Indictment charges Bruce with three offenses:

*Securities Fraud (18 U.S.C. §§1348 and 2).*  Count 1 charges that Bruce "knowingly and

with the intent to defraud" executed a scheme to "(a) defraud a person in connection with a secu-

rity" of a publicly owned company, because Bruce "used material nonpublic information ROSS HAGHIGHAT obtained regarding a proposed merger between Company-1 and Company-2 to execute" trades in Company-1 securities.  Ind. ¶ 81.

*Securities Fraud (15 U.S.C. §§78j(b) and 78ff, 17 C.F.R. §240.10b-5, and 18 U.S.C. §2).* Count 2 charges that Bruce, allegedly having been "provided" with "material nonpublic information" by Ross "in anticipation that [Bruce] would trade Company-1 securities on that information," "willfully used" that information to purchase 2,000 shares of Company-1 stock on or about May 26, 2023. Ind. ¶ 83 and chart, Line 3.

*Conspiracy to Commit Securities Fraud under 18 U.S.C. §1349.*  Count 18 charges that Bruce and Ross "did knowingly and intentionally conspire and agree with each other to commit securities fraud, contrary to" §1348. Ind. ¶ 85.

## ARGUMENT

The Indictment against Bruce Haghighat is subject to dismissal for three independent reasons. *First*, the Indictment is repugnant, based on irreconcilably contradictory allegations. *Second*, the Indictment fails to state an offense, because it does not allege (1) what, if any, MNPI was communicated to Bruce, nor (2) that Bruce knew Ross had any corporate duties or confidentiality obligations relative to Chinook, nor (3) that any information disclosed was in violation of those duties. The sufficiency of the Indictment to charge tippee liability turns on its express factual allegations, not the government's suggested inferences based on incomplete facts. *Third*, the Indictment fails to state an offense, because its specific factual allegations state that Bruce traded as a trustee based on the trust grantor's instructions. They do not state facts showing his awareness of, much less his own willful decision to trade on, any wrongfully disclosed MNPI; nor do they state that Bruce traded or profited for himself, either directly or indirectly.

7

A.    **The Indictment's Contradictory Allegations Against Bruce Warrant Dismissal of the Indictment as Repugnant**

1.    **Governing Legal Principles**

An indictment is defective, and warrants dismissal, if it sets forth conflicting allegations that are "so inconsistent as to be mutually repugnant, depriving the defendant of fair notice and confusing the jury." *United States v. Coburn*, 439 F. Supp. 3d 361 (D. N.J. 2020); *accord United States v. Cisneros*, 26 F. Supp. 2d 24, 52 (D.D.C. 1998) ("A count of an indictment is 'repugnant' and must be dismissed if there is a 'contradiction between material allegations' in the count."). This ground for dismissal does not cover the common practice of charging alternative theories spelled out in the statute, which the statute prohibits in the disjunctive but the indictment usually charges in the conjunctive. *See Coburn*, 439 F. Supp. 3d at 381. Instead, it applies to "stark contradictions, generally factual in nature," such as "allegations that an event both did and did not occur, or that two different people committed a one-person act." *Id.*; *see, e.g.*, *United States v. Rajaratnam*, No. 13-cr-211, 2014 WL 1554078, at *6 (S.D.N.Y. Apr. 17, 2014) ("An indictment is defective if it contains logically inconsistent" or "internally inconsistent" counts).

For example, in *United States v. Conde*, 309 F. Supp. 2d 510, 511-12 (S.D.N.Y. 2003), the court dismissed one of two mutually exclusive counts, where the indictment charged that the defendant both (a) provided a confidential informant with a fraudulent driver's license, and (b) converted payment for the license, while never providing the license to the informant. Similarly, in *United States v. Palo*, No. 16-cr-23, 2017 WL 6594196 (W.D. Pa. Dec. 26, 2017), the court found health care fraud charges irreconcilably inconsistent, where the specific language in the indictment charged that the same scheme was both to perform procedures not required, and to bill for procedures not performed, and required the government to elect which theory (and

8

which counts) to pursue.  And in *United States v. United States v. Cantrell*, 612 F.2d 509 (10th Cir. 1980), the Tenth Circuit found "obvious inconsistency" between the Indictment's charges for transporting weapons from Missouri to Kansas, and simultaneously receiving those same weapons in Kansas, and reversed the convictions for receiving them. *Id.* at 511.

### 2.    The Indictment is Repugnant

Here, the Indictment alleges that Bruce conspired to and executed a scheme to purchase 2,000 shares of Chinook stock based on MNPI provided to him by Ross. The Indictment further accuses Bruce of making illegal profits of approximately $32,680 by selling those shares:

> ¶ 1. Defendant[] … BEHROUZ "BRUCE" HAGHIGHAT … made illegal profits by trading in securities of Company-1 based on material nonpublic information ("MNPI") regarding Company-2's acquisition of Company-1 (the "Acquisition"). [He] exploited MNPI [he] possessed in violation of duties owed in order to execute profitable and timely trades in Company-1 securities. Together, the defendants [including Bruce] profited more than $600,000 from the scheme.

> ¶ 19. ROSS HAGHIGHAT … provided MNPI to BRUCE HAGHIGHAT, who then traded Company-1 securities on the basis of that MNPI. BRUCE HAGHIGHAT purchased approximately 2,000 Company-1 shares prior to the Acquisition Announcement, which BRUCE HAGHIGHAT later sold for a profit of approximately $32,680.

> ¶ 81. … BEHROUZ "BRUCE" HAGHIGHAT … used material non-public information ROSSHAGHIGHAT obtained regarding a proposed merger between Company-1 and Company-2 to execute, and cause … others to execute, transactions in Company-1 securities.

> ¶ 83.  … BEHROUZ "BRUCE" HAGHIGHAT … willfully used [material nonpublic information provided by Ross] to execute and cause others to execute the … [purchase of 2,000 shares of Company-1 on or about May 26, 2023].

Paragraph 18 also alleges that "friends, family, and associates" of Ross, including Bruce, "traded Company-1 securities … on the basis of" MNPI provided by Ross, and Paragraph 85 charges that Bruce conspired to commit securities fraud, based on the same allegations.

The Indictment simultaneously alleges that Bruce did not execute any trades himself and did not make any profit. Rather, the very same trades were executed by the Akma Irrevocable Trust, which made profits of $32,680 from those trades:

> ¶ 20. BRUCE HAGHIGHAT traded those shares in a brokerage account at Broker-2 in the name of the "Akma Irrevocable Trust," a trust for which BRUCE HAGHIGHAT was trustee and ROSS HAGHIGHAT was the grantor (the "Akma Account").

> ¶ 25. … The same day [May 26, 2023], approximately 2,000 Company-1 shares were purchased in the Akma Account [i.e., by the Akma Irrevocable Trust, *see* ¶ 20].

> ¶ 30. … Through the Akma Account [i.e., on behalf of the Akma Irrevocable Trust], Advisor-1 sold approximately 2,000 [of the Trust's] Company-1 shares at approximately $39.00 per share that day, for an approximate profit [to the Trust, *see* ¶ 20] of $32,680.

Paragraph 32 further alleges that the proceeds in the Akma Account were subsequently "wired to an account at Broker-3 in the name of the "R. Ross Haghighat Irrev. Trust," for which BRUCE HAGHIGHAT was [also] the trustee."

These two things cannot both be true. It cannot simultaneously be true that both Bruce and the Akma Trust purchased and sold the exact same shares and made the same profit thereon.

This situation is nearly identical to the *Rajaratnam* case, where the internal inconsistencies ran both between the counts and within the counts. In that matter, the defendant Rajarengan Rajaratnam ("Rengan") was accused of being a "remote tippee" and conspiring with his brother, Raj, the "immediate tippee," and others to engage in insider trading. 2014 WL 1554078, at *1. The defendant (Rengan) moved to dismiss various securities fraud counts on the grounds that they were internally inconsistent. Specifically, the indictment alleged in one count that the defendant's brother, Raj, had caused an entity to purchase certain shares of stock, and in other counts that Rengan had caused the same entity to purchase the same stock:

> Count One alleges that on March 24 and 25, 2008, [the defendant's brother] Raj "caused" the Galleon Tech Funds to buy 261,800 shares of Clearwire stock based on material, nonpublic information. … These are the same shares of stock that, according to Counts Four and Seven, defendant [Rengan] "caused" the Galleon Tech Funds to purchase. …Thus, Counts Four and Seven are inconsistent with Count One. Moreover, because Counts Four and Seven incorporate the allegations in Count One…, they are internally inconsistent as well.

*Id.* at *6. Because the allegations were logically and internally inconsistent, the court ruled it would "grant defendant's motion to dismiss" the counts charging that he (Rengan) caused the trades if the government did not voluntarily dismiss them. *Id.* at *7.

So here. Counts 1, 3, and 18 against Bruce allege that Bruce purchased and profited to the tune of $32,680 from the purchase of 2,000 shares of Chinook stock based on MNPI. Those are the same 2,000 shares, according to other allegations in the Indictment, the Akma Trust purchased and made the same profit on. Given these internal inconsistencies, as in *Rajaratnam*, Bruce has not been given fair notice of what he must be prepared to defend and will be prejudiced by trial of mutually exclusive allegations that will confuse the jury. Moreover, unlike the multi-count indictments in *Rajaratnam*, *Cantrell*, and *Palo*, the contradictions here concern the same paragraphs of the Indictment, making the same set of allegations about the same single trade. They do not vary between counts and thus are not amenable to election between counts. *Cf. Conde*, 309 F. Supp. 2d at 511-12; *Palo*, 2017 WL 6594196, at *7-*8. Accordingly, the Indictment must be dismissed. *See Rajaratnam*, 2014 WL 1554078, at *7.

### B. The Indictment Against Bruce Fails to State an Offense Because Its Factual Allegations Do Not State What (If Any) MNPI Ross Told Bruce, or That Bruce Knew the MNPI Was Disclosed In Violation of Any Duties by Ross

#### 1. Governing legal principles

The Indictment must "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1); *United States v. Huet*, 665 F.3d

588, 594 (3d Cir. 2012).[6] "[A]ll the material facts and circumstances embraced in the definition of the offense must be stated, or the indictment will be defective…. The omission cannot be supplied by intendment or implication, and the charge must be made directly, and not inferentially." *United States v. Hess*, 124 U.S. 483, 486 (1888). Where the charged offense is based on a scheme or artifice to defraud, "all such particulars as are essential to constitute the scheme or artifice" must be stated, "to acquaint [the accused] with what he must meet on the trial." *Id.*

Although "the language of the statute may be used in the general description of an offense, … it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *Id.* at 487.

> The object of the indictment is—*First*, to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, *second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction*, if one should be had. For this, *facts are to be stated; not conclusions of law alone*.

*Id.* at 487-88 (citation omitted) (emphasis added); *accord Huet*, 665 F.3d at 595 ("Federal Rule of Criminal Procedure 12(b)(3)(B) allows a district court to review the sufficiency of the government's pleadings to ensure that legally deficient charges do not go to a jury.") (quoting *United States v. Bergrin*, 650 F.3d 257, 268 (3d Cir. 2011) (cleaned up). The court's review of the facts set forth in the indictment is limited to determining whether, assuming all those facts as true, a jury could find that the defendant committed the offense for which he was charged." *Id.* at 595-

---

[6] *Huet*'s abrogation on other grounds was recognized by *United States v. Hill*, 98 F.4th 473, 482-83 (3d Cir. 2024).

96 (citing *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002)).[7] For an indictment to be

sufficient, it "must allege that the defendant performed acts which, if proven, constitute a

violation of the law that he is charged with violating." *United States v. Hird*, 913 F.3d 332, 339

(3d Cir. 2019).

An indictment is legally *insufficient* where, "even though it may recite in general terms

the essential elements of the offense, it fails to state an offense on the basis that the specific facts

alleged … fall beyond the scope of the relevant criminal statute, as a matter of statutory

interpretation." *United States v. Willis*, 844 F.3d 155, 162 (3d Cir. 2016) (internal citations,

quotations, and marks omitted); *accord Huet*, 665 F.3d at 595 (citing *Panarella*, 277 F.3d at 685

(3d Cir. 2002), and *United States v. Schiff*, 602 F.3d 152, 162-66 (3d Cir. 2010)); *Bergrin*, 650

F.3d at 264-65.[8]

>    **2.      The Indictment's factual allegations do not identify what, if any,
>             MNPI Ross told Bruce; nor that Bruce knew any MNPI was disclosed
>             in violation of any fiduciary duties by Ross**

The three Counts against Bruce (Counts 1, 3, and 18) fail to state offenses because the

specific facts alleged fall beyond the scope of the statutes pled. The crime of insider trading by a

---

[7] *Panarella*'s abrogation on other grounds was recognized in *United States v. Porter*, 933
F.3d 226, 229 (3d Cir. 2019).

[8] Although the Court of Appeals has stated in oft-quoted language that "no greater
specificity than the statutory language is required so long as there is sufficient factual orientation
to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a
subsequent prosecution," *e.g.*, *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007) (citing
older precedent), that statement covered only the first object of the indictment described in *Hess*,
and overlooked the Supreme Court's recognition of the second object: to enable the court to
ensure the alleged facts (taken as true) are legally sufficient to support conviction. *See* 124 U.S.
at 487-88 (quoted *supra*). The Third Circuit's post-*Kemp* caselaw, quoted above, reaffirms the
district court's responsibility to ensure the legal viability of the charges by reviewing whether
every statutory element offense is contained in the Indictment's factual allegations, not merely its
recitation of statutory language in the charge.

tippee, whether pled under the Securities Exchange Act and Rule 10b-5[9] or the more recently

enacted 18 U.S.C. § 1348, requires a tip of MNPI from the tipper to the tippee, with the tippee

knowing that the disclosure of the tip was in violation of the inside tipper's corporate duties.  But

the Indictment's specific allegations against Bruce do not allege particular facts that Ross tipped

Bruce any MNPI, or that Bruce knew Ross had any fiduciary or confidentiality obligations to

Chinook, or that any information disclosed was in violation of such duties.

   In insider trading cases under 15 U. S. C. §§78j(b) and Rule 10b-5, the "tippee's liability

is derivative of a tipper's liability; absent a breach of duty by the tipper, there can be

no derivative breach by the tippee." *SEC v. One or More Unknown Traders in the Secs. Of

Fortress Inv. Grp., LLC*, 2018 U.S. Dist. LEXIS 167164, *22 (D.N.J. Sept. 27, 2018); *see also

United States v. O'Hagan*, 521 U.S. 642, 663 (1997) ("Absent any violation by the tippers, there

could be no derivative liability for the tippee"); *United States v. Chestman*, 947 F.2d 551, 571

(2d Cir. 1991) (en banc) (absent predicate act of fraud by tipper or misappropriator, no liability

as a tippee or as aider and abettor).[10]

   A tipper is liable for a tippee's trading if the tipper has a duty to keep MNPI confidential,

he tips someone who trades with that information, and he personally benefits from giving the tip.

*See Dirks v. SEC*, 463 U.S. 646, 661-64 (1983); *Fortress Inv. Grp.*, 2018 U.S. Dist. LEXIS

167164, at *22. The tippee incurs criminal liability if he knows that the tip was passed on by the

tipper in violation of a fiduciary duty, and that the tip is material nonpublic information, but the

tippee nevertheless trades on the information for his own personal benefit. *See Dirks*, 463 U.S. at

661 ("[T]ippee responsibility must be related back to insider responsibility by a necessary

---

[9] 15 U.S.C. §§ 78j(b), 78ff; 17 CFR § 240.10b-5.

[10] *Chestman* was superseded by regulation on other grounds, as stated in *United States v. McGee*, 763 F.3d 304, 314 n.6 (3d Cir. 2014).

finding that the tippee knew the information was given to him in breach of a duty by a person having a special relationship to the issuer not to disclose the information."). (tippee assumes a duty not to trade on MNPI "only when the insider has breached his fiduciary duty to the shareholders by disclosing the information to the tippee" and the tippee knows there has been a breach); *id.* at 661.[11] *Salman v. United States*, 580 U.S. 39, 45 n.2 (2016) (relying on *Dirks* to uphold conviction of remote tippee who profited by trading stock of the tipper's corporation after receiving tip of MNPI from intermediate tippee, where the tipper personally benefited by gifting the confidential information to the intermediate tippee, a trading relative, which was known to the remote tippee, also a relative and a close friend of the intermediate tippee).

Meanwhile, 18 U.S.C. §1348 provides that it is a crime to "knowingly execute[] … a scheme or artifice— (1) to defraud any person in connection with" the securities of a publicly traded company.[12] A charge under §1348(1) requires both a scheme to defraud and intent to defraud. *United States v. Harra*, 985 F.3d 196, 222 n.21 (3d Cir. 2021) (assuming without deciding that §1348 requires intent to defraud and noting that sister circuits have so decided);

---

[11] *See also id.* at 660 (stating tippee assumes the tipper's duty not to trade on MNPI "only when the insider has breached his fiduciary duty to the shareholders by disclosing the information to the tippee and the tippee knows or should know that there has been a breach"). *Dirks* was a civil case, and its reference to "knows or should know" was based on the requirement, for civil liability, that the tippee had notice that the insider's disclosure was in violation of a fiduciary duty. *See id.* at 660 n.20. As an initial and sufficient matter, the Indictment does not allege Bruce had any such notice. But more importantly, for a tippee to be *criminally* liable under § 78ff(a), his violation must be *willful*. *See O'Hagan*, 521 U.S. at 665 & n.12. A tippee who does not actually know of the tipper's breach of duty does not possess the culpable intent to willfully violate Rule 10b-5. *See id.* at 665; *accord Chestman*, 947 F.2d at 564, 570 (criminal liability requires the tippee to know that the tipper breached his fiduciary duty).

[12] A second prong makes it illegal to knowingly execute a scheme "(2) to obtain, by means of false pretenses, representations, or promises, any money or property in connection with the purchase or sale" of a publicly-traded security. § 1348. Although Count One quotes both prongs of the statute, its "that is" clause, setting forth the specific allegation against Defendants, states only that "the defendants and co-schemers executed and attempted to execute a scheme to defraud."

*United States v. Greenlaw*, 84 F.4th 325, 339 (5th Cir. 2023) (§1348 requires intent to defraud and a scheme to defraud).

Tipper/tippee insider trading cases charged under § 1348 (and §1349 for conspiracy to commit same) follow the same principles as those under the Securities Exchange Act and Rule 10b-5: the scheme to defraud is premised upon the insider intentionally and unlawfully trading upon MNPI or the tippee intentionally trading on MNPI improperly tipped to him by an insider. *See, e.g., United States v. Chow*, 993 F.3d 125, 136-43 (2d Cir. 2021) (upholding conviction under both sets of statutes where defendant agreed upon and intentionally executed a scheme to trade based on misappropriated MNPI); *see generally United States v. Shvartsman*, 722 F. Supp. 3d 276 (S.D.N.Y. 2024) (holding that insider trading doctrine has developed "as an interpretation of the anti-fraud provisions of" 18 U.S.C. §1348, 15 U.S.C. §§78j(b) and 78ff, and 17 U.S.C. §240.10b-5).

Thus, to state offenses under any of the substantive statutes pled here, the Indictment must plead facts showing that Ross in fact tipped Bruce MNPI and that Bruce in fact acted upon that MNPI to execute trades in Company-1 stock. This Indictment wholly fails to do that.

The Court evaluates the sufficiency of the indictment not by its conclusory recitals, *see Hess*, 124 U.S. at 487 ("[T]he charge must be made directly, and not … by way of recital."), but instead by evaluating the indictment's specific factual allegations against the defendant, to see whether the defendant's conduct, so alleged, falls within or beyond the bounds of the statutes defining the crime. *See Hess*, 124 U.S. at 487-88; *Hird*, 913 F.3d at 339; *Willis*, 844 F.3d at 162; *Huet*, 665 F.3d at 595 (all quoted *supra* at 12-13). The general conclusory allegations about unspecified "MNPI" made against all defendants collectively in Paragraphs 1, 18, 81, and 83

thus do not make the Indictment sufficient as to Bruce. The allegations on which the charges against Bruce stand or fall are the specific facts alleged against him in Paragraphs 19 through 32.

Paragraph 19 avers in general terms that "ROSS HAGHIGHAT, for personal benefit with the expectation of trading and in violation of his duties, provided MNPI to BRUCE HAGHIGHAT, who then traded Company-1 securities on the basis of that MNPI." The identity of that MNPI is, however, a mystery.

The closest that the Indictment comes to identifying the MNPI is in Paragraphs 21 and 24, which state:

> ¶ 21. Specifically, on or about May 25, 2023, approximately three days after Company-2 indicated it would increase its proposed all-cash purchase price to $36.00 per share – which was MNPI known to ROSS HAGHIGHAT – BRUCE HAGHIGHAT emailed a wealth advisor, Advisor-1, at Financial Advisor-1, writing, "I have a short window of opportunity for a transaction. Is the AKMA account set up in a way that I can trade options?"

> ¶ 24. Also on or about May 26, 2023…BRUCE HAGHIGHAT texted ROSS HAGHIGHAT, "What is the stick [sic] symbol." ROSS HAGHIGHAT then sent BRUCE HAGHIGHAT a WhatsApp message…with the Company-1 ticker symbol.

But merely alleging that (a) certain MNPI (*i.e.,* "Company-2 indicated it would increase its proposed all-cash purchase price to $36.00 per share") about Company-1 was "known to" Ross" and that (b) Ross told Bruce Company-1's ticker symbol does not do the trick. Still missing is any allegation that Ross provided the "known" MNPI – or any other MNPI about Company-1 – *to Bruce*. Without that key element, the three Counts against Bruce based on that allegation are defective for failing to allege facts stating an essential element of the statutory insider offenses charged.

The Indictment appears to rely on inference, based on timing: that if Bruce sought to make a time-sensitive trade, Ind. ¶ 21 ("I have a short window of opportunity for a transaction."); *id.* ¶ 22 ("I will have a transaction for you as early as Friday, or next Tuesday."); *id.* ¶ 23 ("Well

time is of the essence."), just "three days after Company-2 indicated it would increase its proposed all-cash purchase price," "which was MNPI known to ROSS HAGHIGHAT," Ind. ¶ 21,[13] that Ross must have shared that information, and Bruce must have been acting on it. But "[t]he omission cannot be supplied by … implication, and the charge must be made directly, and not inferentially." *Hess*, 124 U.S. at 486; *see United States v. Pimenta*, No. 14-649 (ES), 2015 WL 6502098, *4-5 (D.N.J. Oct. 27, 2015) (dismissing bank bribery charge because the factual averments failed to allege that the person supposedly bribed was an "agent" under the statute, and rejecting the government's request to infer a principal-agent relationship); *United States v. Blount*, No. 23-216, 2025 WL 406035, *4-5 (W.D. Pa. Feb. 5, 2025) (dismissing sexual abuse charge because the conduct alleged in the indictment did not constitute a "sexual act" under the statute, and rejecting the government's reliance on "potential, but unknown, testimony and evidence" to cure the defect); *see also United States v. Bobo*, 344 F.3d 1076, 1084 (11th Cir. 2023) (stating indictment is insufficient if it "requires speculation on a fundamental part of the charge").

The Indictment also appears to suggest that Bruce's close adherence to Ross's instructions on when and how to sell the shares, which was based on the terms of the Acquisition, *see* Ind. ¶¶ 27-31 (quoted *supra* at 5-6), implies that Bruce was in on a scheme all along to profit based on the Acquisition's specifics. But Ross's sale instructions based on the terms of the Acquisition were given *after the Acquisition was announced*—they were based on *public*, not nonpublic, information. *See* Ind. ¶ 27.

 Even if the Indictment did identify (a) specific MNPI known to Ross (b) that was disclosed to Bruce (c) before the stock purchase, it does not allege that Bruce knew any such

---

[13] *See supra* at 4-5 (quoting relevant paragraphs in full).

information was disclosed in violation of Ross's duties to Chinook. Nowhere does the Indictment state that Bruce knew that Ross was on Chinook's Board. No such allegation appears in the section addressing Bruce's conduct or the trade at issue. *See* Ind. ¶¶ 19-25. Paragraph 2(b), describing Bruce, states only that Bruce "held a Master of Business Administration and was the CEO of a company headquartered in or around Princeton, New Jersey."  That does not state that Bruce was thoroughly familiar with all of Ross's business involvements, including his membership on Chinook's Board. Without specific allegations that Ross disclosed specific MNPI to Bruce and that Bruce knew the disclosure was of inside information in violation of Ross's duties, the Indictment is insufficient for tippee liability by Bruce.[14]

Moreover, the specific allegations against Bruce in Paragraphs 19-25—the proper focus for the sufficiency of the Indictment against him (*see supra* at 12-13)—show a different scenario than the one charged in the general Overview and charging paragraphs: that Bruce directed the purchase and later sale of Chinook shares not for himself, or for his own profit, but *as trustee for the Akma Trust*, which owned the shares and received the proceeds from their sale. As discussed in the next section, the specific allegations in Paragraphs 19-31, read in that light, show that Bruce's purchase and sale of the shares were based on instructions from the trust's grantor, not Bruce's own knowledge or decisions based on any disclosed MNPI.

---

[14] "Where the scheme to defraud alleged in the substantive count is not sufficient to state an offense, a conspiracy count based on the charge must also be found deficient." *Bobo*, 344 F.3d at 1086 (citing *McNally v. United States*, 483 U.S. 350, 361 (1987)).  Thus, Count 18, which conclusorily charges a conspiracy to commit securities fraud in violation of § 1348 (as alleged in Count 1) must be dismissed as well.

### C.    The Indictment Fails to State an Offense Because Its Specific Allegations Show Bruce Did Not Willfully Trade, Profit, Or Do So Based on MNPI

As discussed in Section A, the Indictment against Bruce is inconsistent because it alleges on the one hand that Bruce himself "made illegal profits by trading" (Dkt. 10 ¶1) based on (unspecified) confidential information tipped by Ross; but on the other hand, that Bruce instigated those trades only on behalf of the Akma Trust and made no profits whatsoever for himself (*id.* ¶20). As such, the substantive charges[15] against Bruce in Counts 1 and 3 should be dismissed. Those counts fail to allege that Bruce himself traded or profited and thus are devoid of specific facts to show that the conduct falls within the substantive statutes alleged to have been violated. *See Willis*, 844 F.3d at 162 (quoted *supra* at 15).

Instead, the specific facts alleged—that Bruce "traded those shares … in the name of the 'Akma Irrevocable Trust,' a trust for which BRUCE HAGHIGHAT was trustee and ROSS HAGHIGHAT was the grantor"—show that the communications alleged in Paragraphs 21 through 31 must be read in a specific light: instructions from the Akma Trust's grantor to its trustee. Read in that light, and devoid as they are of any allegation that Bruce received specific MNPI or acted on it, those paragraphs state expressly that Bruce's actions and communications—regarding both the purchase *and* the eventual sale of Chinook shares—were the actions of a trustee following the directions of the trust grantor. A trustee's following a grantor's instructions falls outside the scope of these criminal statutes and is not a crime.

Again, nowhere do those allegations state that Bruce received specific MNPI from Ross, or made trading decisions based on such information, or knew that such information had been

---

[15] We recognize that the Indictment also pleads conspiracy (Count 18) and aiding and abetting (Counts 1 and 3). Those charges are subject to dismissal as argued in Sections III(A) and (B).

improperly disclosed. Those ideas are only implied from timing, based on Ross's knowledge, which is insufficient. What Paragraphs 21 through 25 state expressly is that Ross communicated to Bruce a desired trade, within a specific timeframe, that resulted in the Chinook share purchase. They do not state that Ross shared with Bruce anything more than the stock to be purchased and the desired time frame to do it. Likewise, Paragraphs 27 through 31 state expressly that Ross, the trust's grantor, communicated instructions to Bruce, the trustee, about when and how to sell the shares, and again Bruce followed Ross's instructions. Paragraph 27 quotes a text from Ross tying the sale strategy to the terms of the Acquisition, but at that point the Acquisition *had been publicly announced*. *See id.* There was thus nothing non-public or improper about Ross's sale instructions or Bruce's following them.

Insider trading must be *willful*. *See* 15 U.S.C. § 78ff(a); *O'Hagan*, 521 U.S. at 665 & n.12. To be criminal, the defendant must know his trading information was improperly disclosed, and with consciousness of wrongdoing must intentionally trade based on it. *See id.; Dirks*, 463 U.S. at 660, 664-65; *Salman*, 580 U.S. at 45 & n.2 (discussed *supra* at 15). A trustee's executing a trade based on a trust grantor's direction, which is all that is expressly alleged in Paragraphs 21 through 31, does not make the trade criminal, even if the grantor's decision is based on MNPI known to him.

Moreover, to obtain a conviction on a §1348 charge, financial gain to the defendant must be shown. The alleged pattern of action cannot be merely deceptive but must be intended or designed both to deprive another of money or property and bring about financial gain to the wrongdoer. *See, e.g.*, *Greenlaw*, 84 F.4th at 343-345 & 349-352; *see also United States v. Constantinescu*, No. 22-CR-612, 2024 WL 1221579, at *3, 4-6 (S.D. Tex. Mar. 20, 2024) (to state an offense under §1348 requires the Government to plead "a pattern of action that is

intended or designed" *both* to "deprive another of money or property" *and* "bring about some financial gain to the wrongdoer") (internal quotations, citations, and marks omitted).[16] As for cases brought under Rule 10b-5 and §§78j(b) and 78ff, an individual is not liable as a "tippee" where he does not himself trade profitably on misappropriated MNPI allegedly tipped to him by the insider. *See Chiarella v. United States*, 445 U.S. 222, 230 n.12 (1980) ("'Tippees' of corporate insiders have been held liable under §10(b) because they have a duty *not to profit* from the use of inside information that they know is confidential and know…came from a corporate insider") (emphasis added); *Dirks*, 563 U.S. at 659-60 (noting corporate insiders may not "us[e] undisclosed corporate information to their advantage," nor may they "give such information to an outsider for the same improper purpose of exploiting the information for their personal gain").

In *Salman*, for instance, the conviction of a remote tippee was upheld because the tipper's tip to the intermediate tippee (his brother) resembled "trading by the insider followed by a gift of the profits to the recipient," 580 U.S. at 49, and those circumstances were known to the remote-tippee defendant. Here, the Indictment's specific allegations do not accuse Bruce of trading or profiting for himself, let alone receiving any cash gift equivalent in the form of information. Instead, they state the opposite: that Bruce did not trade for himself at all or make direct or indirect financial gains. Instead, the proceeds of the sale went to the Akma Trust. Ind. ¶¶ 20, 25, 30. Thus, even if Ross were found to have gifted confidential information to the Akma Trust, there is no allegation that Ross gifted confidential information *to Bruce* or that Bruce personally

---

[16] *Greenlaw* observed that because § 1348 was modeled on the mail and wire fraud statutes (18 U.S.C. §§ 1341, 1343), courts have been guided by caselaw construing those statutes. *See* 84 F.4th at 339 n.6. It is well established that a "scheme to defraud" under those federal fraud statutes must be aimed at obtaining, and depriving another of, money or property. *See, e.g.*, *Kelly v. United States*, 590 U.S. 391, 398-99 (2020); *Ciminelli v. United States*, 598 U.S. 306, 312 (2023).

traded or profited on it.

Under these circumstances, the charges in Counts 1 and 3 fail to state offenses under the statutes at issue and afford no basis for a charge of conspiring to violate those statutes (Count 18). All three counts should be dismissed as to Bruce.

## CONCLUSION

For all the foregoing reasons, as well as the reasons argued by the other defendants (which Bruce respectfully adopts), the Indictment against Bruce Haghighat should be dismissed.

Dated:  August 8, 2025                    Respectfully submitted,

By:   */s/ William F. Coffield*

William F. Coffield, IV
Laina C. Lopez
BERLINER CORCORAN & ROWE LLP
1101 17th Street NW, Suite 1100
Washington, D.C. 20036
Tel.: (202) 293-3033
Fax: (202) 293-9035
wcoffield@bcrlaw.com
llopez@bcrlaw.com

*Counsel for Defendant Bruce Haghighat*

## CERTIFICATE OF SERVICE

I certify that on August 8, 2025, I electronically filed the foregoing Motion to Dismiss the Indictment with the Clerk of Court for the United States District Court for the District of New Jersey, using the CM/ECF system, causing it to be served electronically upon all counsel of record.

_/s/ William F. Coffield_
William F. Coffield