

**U.S. Department of Justice**

Criminal Division

*1400 New York Avenue, NW*
*Washington, DC 20005*

September 5, 2025

**Via ECF**

Honorable Michael E. Farbiarz
United States District Court
District of New Jersey
Frank Lautenberg Post Office &
    United States Courthouse
2 Federal Square, Courtroom #4
Newark, New Jersey 07101

    Re:    *United States v. Haghighat, et al.*, **Case No. 25-cr-339 (D.N.J.)**

Dear Judge Farbiarz,

    The United States respectfully writes to apprise the Court of potential conflicts of interest among counsel in the above captioned matter. Specifically, Berliner, Cororan, & Rowe LLP ("Berliner"), has represented four of the five defendants in this matter at various points, specifically, Behrouz "Bruce" Haghighat, Kirstyn M. Pearl, Seyedfarbod "Fabio" Sabzevari, and James D. Roberge. Berliner continues to represent Bruce Haghighat.

    This raises at least two potential conflicts of interest: (1) concurrent conflicts, and (2) conflicts arising from Berliner's duties to former clients. As set forth in our June 10, 2025 letter to counsel (Ex. 1), we believe these potential conflicts should be addressed through, at a minimum, informed consent, confirmed in writing, by each affected client and counsel. Bruce Haghighat has provided a writing. (Ex. 2.) Counsel for Pearl provided an email response. (Ex. 3.) Counsel for Sabzevari provided an email response. (Ex. 4.) Counsel for Roberge indicated he may provide a waiver but we have not received one. (Ex. 5.) The United States respectfully requests the Court address the issue at a hearing to ensure it does not become an issue later in the proceedings, perhaps at the scheduled oral argument on September 26, 2025.

    **I.**    **Background**

    We set forth a partial recitation of relevant facts. Shortly after the investigation in this case became overt in early March 2025, William Coffield of Berliner had phone calls with the United States on which he indicated that he represented, among others, Bruce Haghighat, Kirstyn Pearl, and James Roberge. At that time, the United States (i) indicated that all three individuals were targets of the investigation and (ii) raised concerns that Berliner's concurrent representation of all three individuals presented at least a potential conflict of interest. Berliner continued in the concurrent representation.

In late March 2025, Berliner informed the United States that, in addition to continuing to represent Bruce Haghighat, Kirstyn Pearl, and James Roberge, Berliner also was representing Fabio Sabzevari. Sabzevari had previously retained independent counsel who had communicated with the United States, but Berliner indicated Sabzevari had ended that relationship. The United States: (i) identified for Berliner that Sabzevari was a target of the investigation, as the United States also had done for Sabzevari's prior counsel, (ii) confirmed the continued target status of the other three defendants Berliner represented, and (iii) again raised concerns about potential conflicts.

In early April 2025, Sabzevari retained independent counsel, Gibbons P.C., who has since appeared on Sabzevari's behalf. (*See* ECF Nos. 16, 17, 43.) Berliner continued to represent Bruce Haghighat, Pearl, and Roberge.

On May 22, 2025, the grand jury returned the indictment charging the five Defendants in this matter. Shortly before the May 28, 2025, initial appearances, independent counsel for Roberge, Zachary Intrater, contacted the United States to indicate he would be appearing on behalf of Roberge. Mr. Intrater so appeared for Roberge at the initial appearances and entered an appearance in this case on behalf of Roberge. (*See* ECF No. 49.)

At the initial appearances on May 28, 2025, Berliner lawyers represented both Bruce Haghighat and Pearl. Mr. Coffield appeared for Bruce Haghighat. Mr. Coffield's partner, Laina Lopez, appeared for Pearl. It was not clear to the United States at the time of the initial appearances that Ms. Lopez was Mr. Coffield's law partner. The United States learned only after the initial appearances Ms. Lopez is also a partner at Berliner. Subsequent to the initial appearances, Mr. Coffield and Ms. Lopez both entered appearances on the docket for Bruce Haghighat.

On June 16, 2025, Sara Kropf entered an appearance for Pearl and appeared for Pearl at the arraignment that same day. (*See* ECF Nos. 50, 51.)

On June 10, 2025, the United States raised these potential conflicts issues with defense counsel by letter (forwarded to Ms. Kropf on June 16). (*See* Ex. 1.) The United States requested fully informed written consent from all affected clients, consistent with the applicable Rule of Professional Conduct. The United States also requested defense counsel to confirm their own reasonable belief that they will be able to provide competent and diligent representation to each affected client. The United States received responses from Bruce Haghighat and counsel for Pearl and Sabzevari. (*See* Exs. 2, 3, 4.) Counsel for Roberge has not yet provided a contemplated waiver. (*See* Ex. 5.)

## II.     Legal Standard

The New Jersey Rules of Professional Conduct ("New Jersey Rules") apply because this matter is before the U.S. District Court for the District of New Jersey, which sits in New Jersey and has adopted the New Jersey rules. *See* D.N.J. Local Civ. R. 103.1(a); Cr. R. 1.1. This inquiry primarily implicates New Jersey Rules 1.9, 1.7, 1.10, and 1.6.

## III.     Discussion

The circumstances of this case raise at least the potential for conflicts with former clients and current clients. It is therefore appropriate to obtain all clients' informed consent to the representations, confirmed in writing.

### A. Potential Conflicts of Interests: Former Clients

First, New Jersey Rule 1.9(a) concerns potential conflict issues involving former clients, stating:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent confirmed in writing.

N.J. Rules 1.9(a).

The defendants in this case are involved in the same or substantially related matter.[1] There is at least the potential for the clients' interests to be materially adverse, if material adversity does not already exist.

Second, New Jersey Rule 1.9(c) prevents an attorney from revealing a former client's confidences or using them unless the confidences have become generally known, absent the former client's consent. The Rule states:

> A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
> (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
>
> (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

N.J. Rules 1.9(c). The New Jersey Rules broadly define "confidential information." *See, e.g.*, N.J. Rule 1.6 cmt. ¶ 1 ("[T]he disclosure of any information is prohibited if it would compromise the attorney-client privilege *or otherwise prejudice the client* . . . . (emphasis added)).

### B. Potential Conflicts of Interest: Current Clients

The facts here also present the potential for conflicts of interest with current clients, both with respect to ongoing concurrent representation, as well as with the representation of former clients.

New Jersey Rule 1.7(a)(2) provides:

---

[1] According to Comment [3] to ABA Model Rule 1.9, on which the New Jersey Rule was based, "[m]atters are 'substantially related' for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter."

3

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A conflict of interests exists if:
>
> . . .
>
> > (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

Comment [8] to the ABA Model Rule 1.7 defines "materially limited":

> Even where there is no direct adverseness, a conflict of interest exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests. For example, a lawyer asked to represent several individuals seeking to form a joint venture is likely to be materially limited in the lawyer's ability to recommend or advocate all possible positions that each might take because of the lawyer's duty of loyalty to the others. The conflict in effect forecloses alternatives that would otherwise be available to the client. The mere possibility of subsequent harm does not itself require disclosure and consent. The critical questions are the likelihood that a difference in interests will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgement in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client.

ABA Model Rules of Prof'l Resp. R. 1.7 cmt. [8]; *see also id.* at cmt. [9] ("In addition to conflicts with other current clients, a lawyer's duties of loyalty and independence may be materially limited by responsibilities to former clients under Rule 1.9 or by the lawyer's responsibilities to other persons . . . .").

At the time of the United States' June 10, 2025, letter, Berliner attorneys had filed notices of appearance on behalf of Bruce Haghighat and continued to make representations to the United States on behalf of Pearl. That raised the potential for a conflict with current clients. That potential conflict appears to have been removed by Ms. Kropf entering her appearance on behalf of Pearl on June 16, 2025.

The facts and Rule 1.7 also raise the prospect of potential material limitations on the representation of current clients arising out of Berliner's prior representations of, and continuing obligations to, former clients in this matter.

### C. Imputation

It is important for informed consent to note that conflicts are imputed to other lawyers in a firm. New Jersey Rule 1.10 states:

> When lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by R[ule of] P[rofessional] C[onduct] 1.7 or R[ule of] P[rofessional] C[onduct] 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

Thus, although Ms. Lopez has only outwardly personally represented Pearl and Bruce Haghighat, Mr. Coffield's representation of all four affected defendants is imputed throughout Berliner, including to Ms. Lopez.

### D. Consent

Each current client may consent to representation, notwithstanding a conflict, if the criteria set forth in New Jersey Rule 1.7(b)(4) are met. The Rule states:

> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
> (1) each affected client gives informed consent, confirmed in writing, after full disclosure and consultation, provided, however, that a public entity cannot consent to any such representation. When the lawyer represents multiple clients in a single matter, the consultation shall include an explanation of the common representation and the advantages and risks involved;
>
> (2) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (3) the representation is not prohibited by law; and
>
> (4) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal.

In order to obtain the requisite consent from current clients, former clients likely would first have to consent to enough of their confidential information to be disclosed for the current clients to make informed consent.

### E. Application

Bruce Haghighat appears to have provided a knowing waiver to potential conflicts. (*See* Ex. 2.) The United States respectfully submits the Court should confirm on the record both that waiver and Bruce Haghighat's counsel's own reasonable belief that they will be able to provide competent and diligent representation.

Counsel for Pearl and counsel for Sabzevari each provided assurances on behalf of their clients. (*See* Exs. 3, 4.) Similarly, the United States respectfully submits the Court should confirm on the record as to both client and counsel

Roberge's counsel indicated Roberge may sign a waiver, but has not since supplied the contemplated waiver. (*See* Ex. 5.) The United States respectfully submits the Court should similarly inquire about these issues at a hearing.

### IV.     Conclusion

The United States respectfully apprises the Court of the circumstances regarding counsel in this matter and the potentially relevant Rules of Professional Conduct. The United States respectfully submits the Court may make a further record of these issues at a hearing, perhaps at the scheduled argument on September 26, 2025.

Respectfully,

*/s/ John J. Liolos*
John J. Liolos, Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section