# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA** )<br>)<br>v.                                            )<br>)<br>**HAGHIGHAT**, *et al.*                 )<br>) | **Hon. Michael E. Farbiarz**<br><br>**2:25-cr-339-MEF** |

---

### REPLY MEMORANDUM IN FURTHER SUPPORT OF
### DEFENDANT BEHROUZ "BRUCE" HAGHIGHAT'S
### MOTION TO DISMISS THE INDICTMENT

---

Dated:  September 12, 2025

**BERLINER CORCORAN & ROWE LLP**

William F. Coffield, IV
Laina C. Lopez
1101 17th Street NW, Suite 1100
Washington, D.C. 20036
Tel.: (202) 293-3033

*Attorneys for Defendant Behrouz "Bruce" Haghighat*

## TABLE OF CONTENTS

TABLE OF CONTENTS… ............................................................................................. i

TABLE OF AUTHORITIES… ....................................................................................ii

INTRODUCTION… ..................................................................................................... 1

ARGUMENT… ............................................................................................................. 3

    I.    The Indictment's Mutually Repugnant Allegations Warrant Dismissal… ........................... 3

        A.  Governing Legal Principles… .................................................................... 3

        B.  The Government's Explanation Does Not Eliminate the Logical Inconsistencies in the Indictment's Allegations… .................................. 3

        C.  The Rule Against Repugnant Indictments Applies to Inconsistencies Within Counts, Not Just Between Counts… ........................................... 5

    II.   The Indictment Fails to State an Offense Because Its Factual Allegations Do Not State What (If Any) MNPI Ross Told Bruce; That Bruce Knew the MNPI Was Disclosed In Violation of Any Duties by Ross; or That Bruce Willfully Trade Based on MNPI, as Opposed to Instructions From the Trust Grantor… ..................................................................................... 6

        A.  Governing Legal Principles........................................................................ 6

            1.  Sufficiency review… ...................................................................... 6

            2.  Insider trading… ............................................................................. 7

        B.  The Indictment's Specific Factual Allegations Do Not Identify What, if Any, MNPI Ross Told Bruce; Nor That Bruce Knew any MNPI Was Disclosed in Violation of Fiduciary Duties by Ross; Nor That Bruce Willfully Traded Based On That MNPI, Rather Than On Instructions From the Trust Grantor… ...................................................................... 8

            1.  The government ignores the governing law and substitutes inapplicable civil-law standards… ................................................. 9

            2.  The government's urged inferences are unfounded and insufficient ..................................................................................... 11

CONCLUSION… ........................................................................................................ 14

CERTIFICATE OF SERVICE… ................................................................................. 15

## TABLE OF AUTHORITIES

**Case(s)**                 **Page(s)**

*Dirks v. SEC*,
   463 U.S. 646 (1983)…........................................................................................................ 7

*Hamling v. United States*,
   419 U.S. 87 (1974)….......................................................................................................... 9

*Russell v. United States*,
   369 U.S. 749 (1962)…........................................................................................................ 9

*SEC v. Carroll*,
   2011 WL 5880875 (W.D.Ky. Nov. 23, 2011)….............................................................. 10

*SEC v. McGee*,
   895 F. Supp. 2d 669 (E.D.Pa. 2012)…............................................................................... 7

*United States v. Alston*,
   77 F.3d 713 (3d Cir. 1996)… ............................................................................................11

*United States v. Bergrin*,
   650 F.3d 259 (3d Cir. 2011)........................................................................................2, 10

*United States v. Boyd*,
   999 F.3d 171 (3d Cir. 2021)… .......................................................................................... 1

*United States v. Bray*,
   853 F.3d 18 (1st Cir. 2017)…...........................................................................................10

*United States v. Cantrell,*
   612 F.2d 509 (10th Cir. 1980)… .................................................................................... 5, 6

*United States v. Cisneros*,
   26 F. Supp. 2d 24 (D.D.C. 1998)…................................................................................... 5

*United States v. Coburn*,
   439 F. Supp. 3d 361 (D.N.J. 2020)…........................................................................2, 3, 6

*United States v. Diarra*,
   2025 WL 18642994 (3d Cir. July 7, 2025)….............................................................10-11

*United States v. Greenlaw*,
   84 F.4th 325 (5th Cir. 2023)… ......................................................................................... 2

| **Case(s)** | **Page(s)** |
|---|---|

*United States v. Hess*,
   124 U.S. 483 (1888) .................................................................................. 1, 2, 6-7, 9-10

*United States v. Hird*,
   913 F.3d 332 (3d Cir. 2019)… ............................................................................... 1, 2

*United States v. Huet*,
   665 F.3d 588 (3d Cir. 2012)… ............................................................................... 1, 2

*United States v. Kemp*,
   500 F.3d 257 (3d Cir. 2007) ............................................................................ 1, 2, 9-10

*United States v. O'Hagan,*
   521 U.S. 642 (1997)… ................................................................................................7

*United States v. Palo*,
   2017 WL 6594196 (W.D.Pa. Dec. 26, 2017)… .......................................................5, 6

*United States v. Panzarella*,
   277 F.3d 678 (3d Cir. 2002)… .................................................................................... 2

*United States v. Rajaratnam*,
   2014 WL 1554078 (S.D.N.Y. Apr. 17, 2014)… .................................................... 5, 6

*United States v. Segal,*
   248 F. Supp. 2d 786 (N.D. Ill. 2003)… .................................................................... 10

**Statutes**

15 U.S.C. § 78ff(a)… ........................................................................................................ 7

18 U.S.C. § 1341… ................................................................................................... 2, 7, 9

18 U.S.C. § 1348 ..................................................................................................…2, 7, 9

**Rules**

Fed. R. Crim. P. 7 ............................................................................................................. 9

Fed.R. Crim. P. 12(b)(3)(B) ............................................................................................. 1

Rule 10b-5 ........................................................................................................................ 7

Defendant Behrouz ("Bruce") Haghighat, through counsel, submits this reply to the government's opposition ("ECF No. 85") to his motion ("ECF No. 79") and Memorandum in Support of Motion ("ECF No. 79-1") to dismiss the Indictment.[1]

## INTRODUCTION

The parties agree that "[a] challenge to the sufficiency of the indictment should be decided based on the facts alleged within the four corners of the indictment." ECF No. 85 at 5 (citation omitted). But they disagree about the method or purpose of the Court's review. Relying on one outdated opinion, the government insists the Indictment is sufficient if it recites the elements, apprises the defendant of what he must be prepared to meet, and allows him to plead former acquittal or conviction if prosecuted again. *Id.* at 4-5, 16 (citing *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007)). But that is only the first purpose of review. The second is to review the indictment's specific factual allegations to "decide whether they are sufficient in law to support a conviction, if one should be had." *United States v. Hess*, 124 U.S. 483, 487 (1888); *accord United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012)[2] (Rule 12(b)(3)(B) "allows a district court to review the sufficiency of the government's pleadings to ensure that legally deficient charges do not go to the jury") (cleaned up); *United States v. Hird*, 913 F.3d 332, 339 (3d Cir. 2019) ("[A]n indictment must allege that the defendant performed acts which, if proven, constitute a violation of the law that he is charged with violating.") (citation omitted).

Likewise, the parties agree that an indictment is defective if it contains logically inconsistent allegations that rise to "stark contradictions, generally factual in nature," such as

---

[1] We also join the arguments presented in the other Defendants' reply briefs to the extent they apply to Defendant Bruce Haghighat.

[2] *Huet*'s abrogation on other grounds was recognized in *United States v. Boyd*, 999 F.3d 171, 178 (3d Cir. 2021).

allegations that an event both did and did not occur, or that two different people committed a one-person act." ECF No. 85 at 9 (quoting *United States v. Coburn*, 439 F. Supp. 3d 361, 381 (D.N.J. 2020); *accord* ECF No. 79-1 at 8. Such "mutually repugnant" allegations confuse the jury and deprive fair notice of what the accused must defend against. *See Coburn*, 439 F. Supp. 3d at 381.

Regarding whether the Indictment's specific factual allegations are sufficient to state an offense, the government simply denies the legal standard. It weakly tries to dismiss *Hess*'s requirements as dicta (ECF No. 85 at 15 n.8), despite their centrality to the Court's dismissal of an indictment charging a "scheme to defraud" under the mail fraud statute (18 U.S.C. § 1341) on which the securities fraud statute (18 U.S.C. § 1348) was modeled. *See Hess*, 124 U.S. at 486-88; *United States v. Greenlaw*, 84 F.4th 325, 339 n.6 (5th Cir. 2023). And the government ignores the plethora of post-*Kemp* Third Circuit cases that authorize, then require, the review prescribed in *Hess*.[3] Under that review, the specific facts alleged here—that Bruce traded as a trustee, on the trust grantor's (Ross's) instructions—do not, without more, violate the laws defining the crime charged. *See* ECF No. 79-1 at 11-19, 20-23, and Parts II and III below.

Regarding whether the Indictment is repugnant, the government agrees on the standard but claims the Indictment states only one consistent version of the facts: that Bruce traded only on behalf of the Akma Trust, not on his own behalf. ECF No. 85 at 10. That interpretation ignores the Indictment's broad, plain statements that Bruce "made illegal profits by trading in

---

[3] *See Huet* 665 F.3d at 595, and *Hird*, 913 F.3d at 339 (quoted *supra*); *United States v. Bergrin*, 650 F.3d 259, 264-65 (3d Cir. 2011) ("A district court must find that 'a charging document fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute.") (quoting *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002)); *see also* ECF No. 79-1 at 12-13 & n.8. The government cites *Bergrin* for different propositions, ECF No. 85 at 5, 17, but ignores its requirement for substantive sufficiency review.

securities of Company-1," Ind. ¶ 1, buying and selling shares "for a profit of approximately $32,680" individually, *id.* ¶ 19, and "profit[ing] more than approximately $600,000" in the aggregate with his codefendants, *id.* ¶ 1. These irreconcilable allegations will confuse the jury and whipsaw Bruce in defending against them: did he trade for himself, and illegally profit, or not? For repugnance purposes, the question is not whether the charges require proof that he profited. *Cf.* ECF No. 85 at 11-13. It is whether Bruce may fairly defend against simultaneous allegations that he illegally profited and that he did not. Because those contradictory allegations underlie all counts, they are not subject to election, but instead require dismissal of the Indictment. *See* ECF No. 79-1 at 8-11, and Part I below.

## ARGUMENT

### I. The Indictment's Mutually Repugnant Allegations Warrant Dismissal

#### A. Governing Legal Principles

The parties agree that an indictment is defective if it contains logically inconsistent allegations, involving "stark contradictions, generally factual in nature—allegations that an event both did and did not occur, or that two different people committed a one-person act." ECF No. 85 at 9 and ECF No. 79-1 at 8 (both quoting *Coburn*, 439 F. Supp. 2d at 381). In a criminal indictment, consistency is required to give fair notice and avoid jury confusion. ECF 79-1 at 8-9 (citing *Coburn*).

#### B. The Government's Explanation Does Not Eliminate the Logical Inconsistencies in the Indictment's Allegations

The opening brief explained that the Indictment alleges on the one hand that Bruce illegally profited to the tune of $32,680 by exploiting MNPI to trade in Company-1 shares, but on the other hand that he traded not for himself, but only as trustee of the "Akma Irrevocable Trust," so the profit was the trust's, not his. Both of those things cannot be true. ECF No. 79-1 at 8-11.

3

The government responds that the Indictment's allegations are a model of clarity and consistency, alleging only the latter theory, ECF No. 85 at 10, and asserts "there is no claim that Bruce Haghighat monetarily profited in his personal capacity." *Id.* at 13. "[T]he only place that 'profit' is described as personal to Bruce Haghighat," it says, "is in Bruce Haghighat's brief." *Id.* at 10.

That is hardly a fair reading of the Indictment's allegations that:

- "Defendant[] … BEHROUZ 'BRUCE' HAGHIGHAT [along with his codefendants] *made illegal profits* by *trading in securities* of Company-1, based on material non-public information ("MNPI") regarding … the 'Acquisition'[]," Ind. ¶ 1 (emphasis added);

- "Together, the defendants [including Bruce Haghighat] *profited more than approximately $600,000* from the scheme," *id.* (emphasis added); and

- "BRUCE HAGHIGHAT purchased approximately 2,000 Company-1 shares prior to the Acquisition Announcement, *which BRUCE HAGHIGHAT later sold for a profit of approximately $32,680*," Ind. ¶ 19 (emphasis added).

Those allegations—incorporated by reference in every count (Ind. ¶¶ 80, 82, 84)—say nothing about Bruce's role as trustee of the Akma Trust. Much less do they make clear that Bruce traded *only* as trustee, and not on his own behalf. Nor do they make clear that the "illegal profits" they expressly attribute to "'BRUCE' HAGHIGHAT" (¶ 1) are in fact alleged instead to have been the profits of the trust (ECF No. 85 at 10; Ind. ¶¶ 30, 32).

It would be no surprise to hear the prosecution urge that the above allegations in the speaking indictment be sent to the jury room. Nor would it be a surprise to hear such allegations in the government's opening statement and jury summation, characterizing Bruce as one of a cohesive group of related defendants who collectively "*profited more than approximately $600,000 from the scheme*"—despite (1) the fact that the factual allegations against Bruce are siloed from those against each other Defendant, *see* Ind. ¶¶ 19-32, and (2) the government's admission in its brief that "the profit was the trust's." ECF No. 85 at 10.

4

Courts faced with irreconcilable accusations such as these have rejected the government's post-hoc attempts to explain consistent case theories, focusing instead on the clear, plain meaning of the words the grand jury used in the indictment. *See United States v. Rajaratnam*, No. 13 Cr. 211 (NRB), 2014 WL 1554078, at *6-7 (S.D.N.Y. Apr. 17, 2014); *United States v. Cantrell*, 612 F.2d 509, 510, 511 (10th Cir. 1980); *United States v. Palo*, No. 16cr23, 2017 WL 6594196, at *3, 5-6 (W.D. Pa. 2017).  The *Palo* court explained that the government's post-hoc interpretation in its brief "missed the point," because "nothing in the accusations comprising count one alters the connotations that flow from the natural and common meaning of the words the grand jury chose to employ." *Id.* The same is true here, where the government's post-hoc explanation in its brief does not alter the plain meaning of the unqualified language leading off the Indictment in ¶ 1. "As currently drafted, the indictment is inconsistent and therefore defective because it alleges" that the trades and "illegal profits" alleged against Bruce Haghighat are both his own (¶¶ 1, 19) and not his own (¶¶ 20, 32; ECF No. 85 at 10).[4] "A defendant cannot be called upon to prepare a defense to such inconsistent courses of conduct." *Palo*, 2017 WL 6594196, at *7.

    **C.**    **The Rule Against Repugnant Indictments Applies to Inconsistencies Within Counts, Not Just Between Counts**

Apart from insisting the Indictment alleges only one consistent set of facts, the government also asserts that the rule against repugnant allegations applies only to inconsistencies between counts. ECF No. 85 at 9. But the rule applies equally to internal (intra-count) inconsisten-

---

[4] The government's discussion of agency and trust principles, and whether personal profit is required (ECF No. 85 at 10-13) misses the point. The opening brief did not assert that Bruce "(1) did not execute any trades himself and (2) did not make any profit" as merits defenses. *Contra* ECF No. 85 at 10. Rather, it pointed out the irreconcilability of the *indictment's* simultaneous allegations that Bruce traded for himself and his own profit (Ind. ¶¶ 1, 19), but also solely on behalf of the trust (Ind. ¶¶ 20, 25, 30).  Both cannot be true of the same trades of the same shares. ECF No. 79-1 at 10.

cies. *See United States v. Cisneros*, 26 F. Supp. 2d 24, 52 (D.D.C. 1998) ("A count of an indictment is 'repugnant' and must be dismissed if there is a 'contradiction between material allegations' in the count.") (citation omitted). *Rajaratnam*, the insider-trading case most closely applicable here, was both: its principal contradiction was between counts, *see* 2014 WL 1554078, at *6-7, but because the later counts incorporated the conflicting earlier allegations, they were "internally inconsistent as well." *Id.* at *6. The court applied the rule against repugnant charges to both the inter- and intra-count conflicts. *Id.* at *6-7.

Although some considerations supporting the repugnancy rule arise from inter-count contradictions (*e.g.*, *Cantrell*, 612 F.2d at 510-11 (multiple punishment)), inter-count conflict is not a prerequisite for invoking the rule. *All* mutually exclusive allegations that rise to the level of materiality and irreconcilability described in *Coburn* "foster[] confusion for both the defendant and jury," and leave defendants "confounded or embarrassed in having to present separate defenses." *Palo*, 2017 WL 6594196, at *6. The government offers no argument to the contrary but simply cherry-picks cases in which the conflict was between counts. ECF No. 85 at 9. Such inter-count conflict is not a prerequisite for protection from repugnant accusations.

II. **The Indictment Fails to State an Offense Because Its Factual Allegations Do Not State What (If Any) MNPI Ross Told Bruce; That Bruce Knew the MNPI Was Disclosed In Violation of Any Duties by Ross; or That Bruce Willfully Traded Based on MNPI, as Opposed to Instructions From the Trust Grantor**

A. **Governing Legal Principles**

1. **Sufficiency review**

The indictment must contain "all the material facts and circumstances embraced in the definition of the offense." ECF No. 79-1 at 12 (quoting *Hess*, 124 U.S. at 486). The omission of an element "cannot be supplied by intendment or implication, and the charge must be made directly, and not inferentially." *Id.* Where the charged offense is a scheme to defraud, as under the

6

mail fraud statute (§ 1341) or the securities fraud statute modeled on it (§ 1348), "all such particulars as are essential to constitute the scheme" must be stated. *Id.* The court reviews to ensure, *first*, that the accused has sufficient notice to prepare his defense, and to be able to plead former conviction or acquittal if re-prosecuted in the future; and *second*, that the facts alleged to constitute the offense, if proved, "are sufficient in law to support a conviction." *Id.* (quoting *Hess*, 124 U.S. at 487-88. "For this, facts are to be stated; not conclusions of law alone." *Id.* Third Circuit law today is the same. *See supra* at 1-2 & n.2; ECF No. 79-1 12-13 & n.8.

### 2. Insider trading

Criminal tippee liability under 15 U.S.C. § 78ff(a) and Rule 10b-5 (Count 2) requires a tip of MNPI; for personal benefit to the tipper; that the tippee know the disclosure violated the tipper's corporate duties; and that the tippee knowingly and willfully trade based on the MNPI. ECF No. 79-1 at 13-15 & n.11.[5] Under 18 U.S.C. § 1348 (Count 1), the statutory elements are (1) execution (or attempt) of a scheme to defraud, § 1348(1);[6] (2) knowingly and with intent to defraud; (3) in connection with a security. ECF No. 85 at 6. It is not enough to charge a "scheme to defraud" in the language of the statute; the Indictment must describe the facts alleged to constitute the tippee-liability insider-trading offense charged here. *See Hess*, 124 U.S. at 487-88. "[F]acts are to be stated, not conclusions of law alone." *Id.*; *see* Subsec.II.A.1, *supra*.

---

[5] The government contends it is enough to show the tippee "knew *or should have known*" the information was disclosed in violation of a duty. ECF No. 85 at 7 (citing *SEC v. McGee*, 895 F. Supp. 2d 669, 682 (E.D.Pa. 2012) (emphasis added). But *McGee* was a civil enforcement case, where the "knew or should have known" standard suffices. *See, e.g.*, *Dirks v. SEC*, 463 U.S. 646, 660 (1983). For criminal liability, however, the violation must be *willful*. *See* 15 U.S.C. §78ff(a); *United States v. O'Hagan*, 521 U.S. at 665 & n.12 (1997). A tippee who does not actually know the tipper breached a duty does not possess the required willful intent. ECF No. 79-1 at 15 n.11.

[6] Although § 1348(2) also prohibits executing a scheme "to obtain, by means of false pretenses, representations, or promises, any money or property in connection with the purchase or sale" of a security, the Indictment does not charge such a scheme. ECF No. 79-1 at 15 n.2.

7

> **B.     The Indictment's Specific Factual Allegations Do Not State What, if Any, MNPI Ross Told Bruce; Nor That Bruce Knew any MNPI Was Disclosed in Violation of Fiduciary Duties by Ross; Nor That Bruce Willfully Traded Based On MNPI, Rather Than On Instructions From the Trust Grantor**

The Indictment fails to state an offense because it does not allege specific facts showing that Ross tipped Bruce with any MNPI, or that Bruce knew that: (i) any information disclosed to him *was* MNPI, or (ii) its disclosure violated a fiduciary nondisclosure duty, ECF No. 79-1 at 13, 16-19, or that Bruce traded based on any such MNPI, rather than simply on Ross's instructions as trust grantor, *id.* at 20-21.[7] At most, there are conclusory statements tracking the elements of the claim, which are not enough. *Id.* at 16-17. Even the principal factual paragraph cited by the government alleges only that "Ross Haghighat, for personal benefit with the expectation of trading and in violation of his duties, provided MNPI to Bruce Haghighat, who then traded Company-1 securities on the basis of that MNPI." Ind. ¶ 19 (quoted in ECF No. 85 at 14). The factual allegations against Bruce do *not* allege *what* MNPI Ross communicated to Bruce, nor that Bruce knew it was MNPI, nor that Bruce knew its disclosure violated a fiduciary duty by Ross, ECF No. 79-1 at 17-19, nor that Bruce willfully traded on MNPI rather than on the grantor's instructions, *id.* at 20-21.

The government concedes the Indictment does not state those facts, and boldly asserts it need not do so. Rather than contest the factual insufficiency, the government simply denies the governing law. ECF No. 85 at 13-14. The government is flat wrong.

---

[7] At this motion to dismiss stage, we withdraw the contention in ECF No. 79-1 at 21-23 that is based on lack of personal profit to Bruce. *Cf.* ECF No. 85 at 19-25. We will continue to monitor the development of the law in this area and, if necessary, will revisit the issue at the jury instruction stage.

### 1. The government ignores the governing law and substitutes inapplicable civil-law standards

*Hess* specifically concerns review of the sufficiency of an indictment's factual allegations describing a "scheme to defraud" charged under the mail fraud statute (§ 1343), on which the securities fraud statute (§ 1348) is based. That was the only issue in *Hess*. In a footnote, the government belittles *Hess*'s on-point rule as mere "dicta from 1888, before Rule 7 or Section 10(b) existed" (ECF No. 85 at 15 n.8), ignoring that the Supreme Court reaffirmed *Hess*'s requirements in *Hamling v. United States*, 419 U.S. 87, 117-18 (1974), and *Russell v. United States*, 369 U.S. 749, 765-66 (1962), two landmarks governing sufficiency review of indictments under Rule 7. In *Russell*, the Supreme Court quoted *Hess* and all three cases on which it was based and affirmed that "these basic principles of fundamental fairness retain their full vitality under modern concepts of pleading, and specifically under Rule 7(c) of the Federal Rules of Civil Procedure." 369 U.S. at 765-66.

Moreover, since at least 2012, the Third Circuit has repeatedly affirmed district courts' authority and obligation to review an indictment's specific factual allegations to determine whether they are sufficient, if proven, to support a conviction under the statute charged. *See supra* at 1-2 & n.2. The government ignores that entire body of decisions, steadfastly clinging to one earlier decision that predates them (*Kemp*) and insisting it is the last word.

Rather than confront the abundant on-point criminal caselaw, the government rolls out a smorgasbord of civil enforcement cases and asserts it may rely on inferences from circumstantial evidence to fill in holes in the Indictment's factual allegations. *See* ECF No. 85 at 14. But the still-vital *Hess* is clear: in a criminal indictment, "all the material facts and circumstances embraced in the definition of the offense must be stated," with no essential element omitted, and any "omission *cannot be supplied by … implication*." 124 U.S. at 486. "[T]he charge must be

9

made directly, *and not inferentially*, or by way of recital." *Id.* The government's civil cases, which rely on the principle that complaints are liberally construed in favor of the plaintiff, *e.g.*, *SEC v. Carroll*, No. 11-165, 2011 WL 5880875, at *1 (W.D.Ky. Nov. 23, 2011), emphatically do not apply here. Not a single case the government cites (ECF No. 85 at 14-16) applies to review of the sufficiency of a criminal indictment,[8] other than *Kemp* (cited *id.* at 16), which has been overtaken by the body of Third Circuit law the government ignores. *See supra* at 1-2 & n.2.[9]

At bottom, the government identifies no direct factual allegations (i) that Ross in fact provided any MNPI to Bruce (and if so, what MNPI); (ii) that Bruce knew it was MNPI, or (iii) that Bruce knew Ross's disclosure violated a fiduciary obligation to Company-1. Instead, as anticipated (ECF No. 79-1 at 17-19) the government relies solely on stacked inferences and speculation to fill the Indictment's gaps. That the government cannot do. *See* Sec. II.A.1, *supra*.

Because the government is wrong on the law and does not contest the indictment's factual insufficiency under the correct legal standard, the indictment must be dismissed.[10]

---

[8] The only criminal case the government cites, *United States v. Bray*, 853 F.3d 18, 22-23 (1st Cir. 2017), involved a post-trial challenge to the sufficiency of the *trial evidence*, where the court was *required* to draw all inferences in favor of the verdict (conviction). That is far different than drawing inferences from charging *allegations*, which is prohibited. *Hess*, 124 U.S. at 486.

Elsewhere, the government cites *United States v. Segal*, 248 F. Supp. 2d 786, 789-90 (N.D. Ill. 2003), to contend that "[i]n construing the indictment, the Court infers facts necessarily implied." ECF No. 85 at 4. But "facts *necessarily* implied" means facts that *must* be true given other facts. It does not authorize permissive, circumstantial inferences to fill factual holes.

[9] *Bergrin*, 650 F.3d at 265, cited at ECF No. 85 at 17, is one of the Third Circuit's recent cases upholding review of the indictment's specific factual allegations to determine if they can support conviction. *See supra* at 2 n.3. On page 17, the government cites it for a different proposition, while ignoring its support of Defendant on the disputed legal standard.

[10] In a footnote, the government contends that the conspiracy charge (Count 18) should survive because "[c]onspiracies can be shown from entirely circumstantial evidence." ECF No. 85 at 17 n.9 (citing *United States v. Diarra*, No. 22-3232, 2025 WL 1862994, at *5 (3d Cir. July 7, 2025) (non-precedential)). But *Diarra*, like *Bray*, involved a post-trial challenge to sufficiency of the evidence, not a motion to dismiss the indictment for failure to state an offense. *See* note 8, *supra*. Moreover, *Diarra* notes that a conspiracy charge still requires evidence that the defendant had intent to achieve "the specific unlawful purpose charged in the indictment." 2025 WL

### 2.  The government's urged inferences are unfounded and insufficient

Even if permissive inferences could sustain an indictment whose direct factual allegations do not satisfy the elements of the charged offenses, the inferences urged by the government here are unfounded, amounting to little more than speculation and argument. That is especially true when the facts alleged against Bruce (Ind. ¶¶ 19-32) are read in light of the government's representation that Bruce is alleged to have traded only as trustee for the Akma trust, and not on his own behalf. *See* ECF No. 85 at 10, 13 (quoted *supra* at 4); *see also* ECF No. 79-1 at 20.

To be clear: our argument here and in Part C of the opening brief does not argue the evidence: there is no evidence yet. Nor does it argue that Bruce's trustee role insulates him from liability, as the government mistakenly contends. This is not the time for merits defenses.[11] Instead, we point out that the allegations in Paragraphs 19-32 of the Indictment, read in light of Bruce's alleged trustee role, show the actions of a trustee following instructions from the trust grantor—not a tippee trading on his own behalf (as in a typical tippee-liability case). Even accepted as true, they do not show that Bruce received MNPI from Ross, knew it was MNPI disclosed in violation of a corporate duty, and willfully traded based on that MNPI (as opposed to on the

---

18642994, at *5. Where the indictment's factual allegations are insufficient to show the intent required for the charged substantive offense, they are also insufficient to show the intent required to conspire to commit it. *See United States v. Alston*, 77 F.3d 713, 719 (3d Cir. 1996).

[11] We do not contend, for instance, that Bruce may not be convicted because he did not "trade" Company-1 stock. *Contra* ECF No. 85 at 10-13, 18. The Indictment plainly alleges he placed trade orders with Financial Advisor-1. But because the Indictment's specific allegations show only that he traded on the trust's behalf based on the grantor's instructions, they do not suffice to charge that he knowingly and willfully traded *based on MNPI*, rather than those instructions. ECF No. 79-1 at 21.

Nor does Bruce advance a selective prosecution defense, which appears nowhere in the opening brief. The government has not only described a straw-man argument (ECF No. 85 at 14) but demonstrated one (*id.* at 18-19).

11

instructions of the trust's grantor). *See* ECF No. 79-1 at 20-21.[12] Without facts alleged that satisfy those elements, the Indictment fails to state an insider-trading offense against Bruce.

Start where the government starts, with Paragraph 19 (*see* ECF No. 85 at 14). It conclusorily recites that Ross, for his own personal benefit, in violation of his duties, and with the expectation that Bruce would trade, gave unidentified MNPI to Bruce, and Bruce traded on it. *Id.* But that is alleged solely from Ross's point of view. There is no allegation that Bruce knew the information was MNPI, or knew Ross disclosed it in violation of a duty to Company-1. Whatever information Ross might have given Bruce (which is not alleged), unless Bruce knew Ross was an insider and that the (unalleged) information came from Ross's inside role at Company-1, and was disclosed in violation of a duty to Company-1, there is no basis to infer that Bruce knowingly and willfully traded on inside information.

Nowhere does the Indictment allege that Bruce even knew Ross was a Director of Company-1. ECF No. 79-1 at 19. The sole basis the government identifies for such knowledge is the allegation that Bruce was Ross's brother, held an MBA, and was CEO of his own company. Ind. ¶ 2.b; ECF No. 85 at 16. But Ross had numerous business roles, including being CEO and Chairman of a defense contracting firm. Ind. ¶ 2.a. There is no allegation that Bruce was familiar with all of his brother's business affairs.[13] The government's "[in]credulity" that Bruce would "not know his own brother's role on the Board of Company-1," ECF No. 85 at 16, is the product of rank assumption, not reasoned inference from any allegation in the Indictment.

The government also makes much of Bruce's communications that there was a "short

---

[12] They do not foreclose those possibilities (which is not the question at this stage), but without more they do not allege them—either directly or by necessary implication.

[13] The extent of Ross's and Bruce's respective business affairs is outside the four corners of the Indictment.

12

window of opportunity" for the transaction and "time is of the essence." ECF No. 85 at 15-16. But these statements do not reflect that Bruce knew the alleged reason for urgency, *i.e.*, any MNPI. Instead, in light of Bruce's and Ross's trust roles, these statements show only that Ross, the grantor, wanted to make a purchase quickly, and Bruce, the trustee, sought to follow that instruction. The government appears to acknowledge this by wondering why Bruce would "not even ask his own brother why 'time is of the essence.'" *Id.* at 16. Again, the point is not that being "just the trustee" is a defense. *Contra* ECF No. 85 at 10-11, 18. It is that *without more*, these paragraphs do not state facts showing Bruce knowingly and willfully traded based on inside information, as opposed to on the grantor's instructions. The "more" that the government urges in its brief is mere assumption and speculation—not reasoned inference from other factual allegations (there are none), even if such inferences were permissible (they are not).

    The government adds more speculation and innuendo, but cannot point to any more allegations of fact. Bruce's asking "what is the stick [sic] symbol?" (*Id.* at 15; Ind. ¶ 24) shows only that he needed to know the symbol for the stock Ross asked him to buy for the trust. The allegations that he asked that "on May 26—the very day Company-1 and Company-2 agreed on general terms of a deal," and then said he would "just…buy it direct," within "the next hour," *id.*—reflect only that Ross, as grantor, urged Bruce, as trustee, to get the purchase done that day.[14] *See also* ECF No. 85 at 16 ("I am trying to buy it today.") (quoting Ind. ¶ 25). It does not mean Bruce knew what Ross knew that day, unless Ross told him—and the Indictment does not say Ross did. Nor does it mean Bruce should have figured it out, or known something was up, unless Bruce knew Ross was a Company-1 insider—and the Indictment does not allege that he knew.

---

[14] Indeed, Bruce's text, "*If you changed your mind, let me know* in the next hour," Ind. ¶ 24 (emphasis added), shows that Bruce was acting at Ross's direction, not trading based on his own assessment of any information, MNPI or not.

13

The government further contends that "[w]hat Bruce Haghighat allegedly did not say in certain instances also speaks volumes," claiming that Bruce's text to Ross on Acquisition day was "let me know when u want to sell stock," without more. ECF No. 85 at 16 (quoting Ind. ¶ 27). The government speculates what a non-inside-trader might have wanted to know, and claims, "No such statement is alleged." ECF No. 85 at 17. But absence of an allegation is not an allegation of absence. The government, the drafter of the bill presented to the grand jury, had the power to include and exclude what it wanted to. Nowhere does the Indictment allege that the text the government now highlights was the first or only thing said.

"[P]ermissible inferences" from "circumstantial" allegations (*id.* at 15) cannot sustain an Indictment that does not directly allege facts sufficient to state an offense. Secs. II.A.1, II.B.1, *supra*. But even if they could, the government's speculation does not rise to that level. The facts alleged in the Indictment are not sufficient to state an insider-trading offense against Bruce.

## CONCLUSION

For all of the reasons argued above and in the opening brief, as well as the reasons argued by the other defendants (which Bruce respectfully adopts), the Indictment against Bruce Haghighat should be dismissed.

Dated:  September 12, 2025          Respectfully submitted,
By:   */s/ William F. Coffield*
William F. Coffield, IV
Laina C. Lopez
BERLINER CORCORAN & ROWE LLP
1101 17th Street NW, Suite 1100
Washington, D.C. 20036
Tel.: (202) 293-3033
Fax: (202) 293-9035
wcoffield@bcrlaw.com
llopez@bcrlaw.com

*Counsel for Defendant Behrouz "Bruce" Haghighat*

14

## CERTIFICATE OF SERVICE

I certify that on September 12, 2025, I electronically filed the foregoing Motion to Dismiss the Indictment with the Clerk of Court for the United States District Court for the District of New Jersey, using the CM/ECF system, causing it to be served electronically upon all counsel of record.

                  */s/ William F. Coffield*
                  William F. Coffield